IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TED AARON MCCRACKEN | : | CIVIL ACTION |
| MCCRACKEN FUEL COMPANY, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., et al. | : | NO.  15-1915 |

## MEMORANDUM

**DAVIS, J.**                                                                                                      **APRIL 24, 2015**

Plaintiff Ted Aaron McCracken brings this lawsuit against Wells Fargo and others based primarily on the fact that he was unable to access his bank account while on a trip to Cameroon, Africa in 2011.  He seeks leave to proceed *in forma pauperis*.  The Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint.[1]

### I.      FACTS[2]

Plaintiff's claims are based on his allegations that Wachovia, which was subsequently purchased by Wells Fargo, and its employees prevented him from accessing his bank account while he was travelling in Cameroon.  In 2006, Plaintiff married a woman of African descent who lived in Cameroon.  The complaint suggests that plaintiff, who lived in the United States, was supporting his wife from abroad.  In 2010, plaintiff opened a checking account with Wachovia.

---

[1] An entity by the name of McCracken Fuel Company, Inc. is also named as a plaintiff in the caption of the complaint.  As a corporation may only appear in federal court through licensed counsel and may not proceed *in forma pauperis*, McCracken Fuel Company, Inc., will be dismissed without prejudice as a party to this action.  *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993); *Dukes v. Lancer Ins. Co.*, 390 F. App'x 159, 161 n.1 (3d Cir. 2010) (per curiam).

[2] The following facts are taken from the complaint and publicly available dockets of court proceedings.

On March 25, 2011, plaintiff purchased an airplane ticket to Cameroon via Paris, France on his Wachovia/Wells Fargo debit card. Plaintiff planned to be gone from April 1, 2011 through June 2, 2011. The next morning, a bank employee called plaintiff to confirm the transaction. During that phone call, plaintiff informed the employee that he would be in Cameroon from April 10, 2011, through May 10, 2011, and asked whether he would be able to access his account in Cameroon. The employee responded that plaintiff would be able to access his account.

According to plaintiff, he was able to access his bank account in France but, when he arrived in Cameroon on April 10th and tried to use his debit card to withdraw money from an ATM, his transaction was denied. Plaintiff attempted to withdraw money for the next five days without success. As he and his wife exhausted the money they had, and as "[t]elephone communication was extremely difficult," plaintiff somehow gained access to his mother's account and transferred some of his mother's money into his own account. Compl. ¶ 33. The next day, April 17, 2011, plaintiff was able to access his account from Cameroon using his debit card. Plaintiff's mother reported the theft, and plaintiff was arrested when he returned to the United States.

In 2012, plaintiff was tried, convicted, and sentenced to two-and-a-half to five years of imprisonment for the theft of $1,400 from his mother's bank account. Compl. ¶¶ 35-37; *see also Commonwealth v. McCracken*, Docket No. CP-46-CR-0004322-2011 (Montgomery Cnty. Ct. Common Pleas). Plaintiff raised justification and duress defenses at trial. In that regard, he testified that he had unsuccessfully tried to use his own debit card and had "exhausted all of his resources" such that he was "forced by hostile circumstances to withdraw money from his mother's account to protect himself and his wife, anticipating coordinating a trade of his money

for [his mother's]." Compl. ¶ 38.  He also sought to subpoena certain records from Wachovia/Wells Fargo but the bank did not respond to the subpoena or produce records. Plaintiff alleges that the bank's failure to respond to his subpoena resulted in his conviction. *Id.* ¶ 45.

Wells Fargo acquired Wachovia in 2011.  On July 20, 2012, plaintiff learned from watching the news that Wells Fargo had reached a settlement with the U.S. Department of Justice related to allegations that it had "been engaging in a wide pattern of racially discriminatory banking practices against blacks and Hispanics." Compl. ¶ 47.  The complaint in that case raised claims under the Fair Housing Act and the Equal Credit Opportunity Act "to redress the discrimination based on race and national origin that Wells Fargo engaged in from at least 2004 to 2009, during the mortgage boom." *United States v. Wells Fargo Bank, NA*, Civ. A. No. 12-1150 (D.D.C.) (Compl., ECF No. 1, ¶ 1).  Based on that settlement, plaintiff surmised that his inability to access his bank account reflects that the bank discriminated against him because he was traveling in Africa and his wife is black and of African descent.

The complaint also notes that plaintiff was diagnosed with thyroid cancer in 2005 and explains plaintiff's numerous attempts to sue the Environmental Protection Agency and the U.S. Nuclear Regulatory Commission to limit the levels of gamma radiation in Southeastern Pennsylvania and elsewhere.  He also initiated lawsuits against government contractors and others.  From 1995 through 2010, plaintiff instituted a total of forty-five actions in federal court in connection with his environmental concerns.  Compl. ¶ 154.  Plaintiff surmises that Wachovia/Wells Fargo denied him access to his bank account in retaliation for those lawsuits

against government agencies by using the authority bestowed upon the bank under the Patriot Act to prevent terrorism.[3]  *Id.* ¶ 70.

On April 9, 2015, plaintiff filed the instant civil action against Wachovia and Wells Fargo and several unknown bank employees.  The complaint purports to assert constitutional claims against the defendants (either pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)) including a claim that the defendants retaliated against plaintiff because he filed lawsuits against the government concerning gamma radiation, claims pursuant to 42 U.S.C. § 1985, claims that the defendants discriminated against plaintiff based on his wife's race and/or because he was travelling in Africa (presumably in violation of 42 U.S.C. § 1981), and various state law claims.  The claims all relate to plaintiff's inability to access his account while traveling in Africa in 2011, and his subsequent arrest, conviction, and imprisonment for theft.  Plaintiff seeks damages and a declaration that the defendants violated his rights.

## II.     STANDARD OF REVIEW

Plaintiff's motion to proceed *in forma pauperis* is granted because he has satisfied the requirements set forth in 28 U.S.C. § 1915.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) & (ii) require the Court to dismiss the complaint if it is frivolous or fails to state a claim.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

---

[3] In support of that theory, plaintiff relies extensively on a book entitled "Taking Liberties," which was published in 2011.

To survive dismissal for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* The Court may also consider matters of public record in deciding whether to dismiss a complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013). As plaintiff is proceeding *pro se*, the Court will construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Claims Under § 1983, § 1985 and *Bivens*

Section 1983 provides a cause of action to redress constitutional violations caused by officials acting under color of state law, while *Bivens* authorizes a cause of action to redress constitutional violations caused by officials acting under color of federal law. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Section 1985 provides a cause of action based on a conspiracy to violate federal rights. *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989).

Nothing in the complaint suggests that any of the defendants were acting under color of state law for purposes of § 1983, so as to provide a plausible legal basis for a claim under that provision. Furthermore, even assuming that some or all of the defendants could be said to have acted under color of federal law in connection with plaintiff's allegations that they were exercising authority given to them under the Patriot Act, the Supreme Court has generally

rejected *Bivens* claims brought against private corporations and their employees when traditional state law tort remedies are available.  *See Minneci v. Pollard*, 132 S. Ct. 617, 621-23 (2012); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001).  It is also not entirely clear whether *Bivens* supplies a cause of action for First Amendment retaliation claims.  *See George v. Rehiel*, 738 F.3d 562, 585 n.24 (3d Cir. 2013).  In any event, even assuming the existence of a *Bivens* remedy here, plaintiff's *Bivens* claims fail, as do his § 1985 claims.

As with § 1983 claims, if success upon a plaintiff's *Bivens* claims would necessarily imply the invalidity of the plaintiff's conviction or imprisonment, those claims are not cognizable in a federal civil action.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"); *Lora-Pena v. FBI*, 529 F.3d 503, 505 n.2 (3d Cir. 2008) (applying *Heck* to *Bivens* claims). That principle also holds true for claims brought under § 1985.  *See Zhai v. Cedar Grove Municipality*, 183 F. App'x 253, 255 (3d Cir. 2006) (per curiam).  To the extent plaintiff is alleging his constitutional or federal rights were violated in connection with his convictions and related incarceration, his claims are not cognizable because nothing in the complaint suggests that his convictions or imprisonment has ever been invalidated.  To the contrary, the docket for plaintiff's underlying criminal proceeding reflects that his convictions remain intact.  *See Commonwealth v. McCracken*, Docket No. CP-46-CR-0004322-2011 (Montgomery Cnty. Ct. Common Pleas).  In any event, the Court rejects as frivolous plaintiff's theory that the defendants could be held

responsible for his criminal conduct in connection with any acts or omissions that prevented him from accessing his account while travelling in Cameroon.

To the extent plaintiff raises claims that are not barred by *Heck* (such as claims based on his inability to access his account and his arrest) his claims are time-barred. A two-year statute of limitations governs plaintiff's *Bivens* and § 1985 claims. *See* 42 Pa. Cons. Stat. § 5524; *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989); *Napier v. Thirty of More Unidentified Fed. Agents*, 855 F.2d 1080, 1087 & n.3 (3d Cir. 1988). Plaintiff's false arrest and any related false imprisonment claims accrued by June 9, 2011, when his preliminary arraignment took place. *See Wallace v. Kato,* 549 U.S. 384, 397 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *see also Commonwealth v. McCracken*, Docket No. MJ-38121-CR-0000188-2011. Any claims based on plaintiff's inability to access his account accrued by April 16, 2011 (the end of the six-day period during which plaintiff could not access his bank account from Africa) because, at that time, plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Notably, other than plaintiff's conviction and imprisonment (which cannot serve as the basis for a claim for the reasons discussed above), none of the events upon which plaintiff's claims are based occurred after 2011. As plaintiff filed his complaint on April 9, 2015—more than two years after his claims accrued—the Court will dismiss any remaining *Bivens* and § 1985 claims as time-barred. In any event, plaintiff's theory that the defendants prohibited him from accessing his account for six days to retaliate against him for filing lawsuits against the federal government appears to be based completely on speculation,

which is insufficient to state a claim, and arguably rises to the level of delusional such that it is factually frivolous.[4]  *See Iqbal*, 556 U.S. at 679-81; *Denton*, 504 U.S. at 32.

### B. Section 1981 Claim

To state a claim under § 1981, a plaintiff must plausibly allege, among other things, "that defendants acted with the 'intent to discriminate on the basis of race' in connection with 'one or more of the activities enumerated in the statute,'" including the right to make and enforce contracts. *Holmes v. Fed Ex*, 556 F. App'x 150, 151 (3d Cir. 2014) (per curiam) (quoting *Brown*, 250 F.3d at 797).  The Court understands plaintiff's § 1981 claim to be based on his allegations that the defendants denied him access to his account because he is married to a black woman of African descent and/or because he was travelling in Africa.  The factual basis for plaintiff's allegation that the defendants intentionally discriminated against him appears to be Wells Fargo's settlement of race discrimination claims with the Department of Justice and a book that plaintiff read.  *See* Compl. ¶¶ 47-49 & 73.

The complaint does not state a plausible claim under § 1981.  That Wells Fargo settled Fair Housing Act and Equal Credit Opportunity Act claims based on discriminatory conduct it

---

[4] Additionally, to the extent plaintiff seeks to raise claims under the criminal statutes, treaties, or other sources of international law referenced in the complaint, such claims are legally frivolous. *See, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (Universal Declaration of Human Rights and International Covenant on Civil and Political Rights do not "create obligations enforceable in the federal courts"); *Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]") *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1175 (Fed. Cir. 2009) (no private right of action under the International Convention on the Elimination of All Forms of Racial Discrimination); *Pierre v. Att'y Gen. of U.S.*, 528 F.3d 180, 184-85 (3d Cir. 2008) (en banc) (the Convention Against Torture prohibits extradition of a person to another state where there are substantial grounds for believing he would be in danger of being subjected to torture).  Many of plaintiff's constitutional theories, e.g., that he was denied the right to associate with his wife as a result of being denied access to his bank account, are also legally frivolous.

engaged in from 2004 to 2009 in connection with the mortgage boom has no relevance at all to plaintiff's inability to access his bank account.  Furthermore, generalized allegations about laws governing banks and examples of discrimination reported in books do not plausibly suggest that the defendants discriminated against plaintiff.  In other words, plaintiff's § 1981 claims are based entirely on plaintiff's speculation and conjecture derived from unrelated cases of discrimination by Wells Fargo or allegations of discrimination by banks in general.  Accordingly, the complaint does not plausibly allege that the defendants intentionally discriminated against plaintiff so as to state a § 1981 claim.  *See Abdullah v. Small Business Banking Dep't of Bank of Am.*, 532 F. App'x 89, 91 (3d Cir. 2013) (per curiam) (affirming dismissal of § 1981 claim where plaintiff alleged that the "only explanation for the appellees' conduct was racial discrimination"); *see also Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

### C. State Law Claims

The complaint also purports to raise numerous claims under state law, including claims for negligence, intentional infliction of emotional distress, loss of consortium, false arrest, false imprisonment, battery, breach of fiduciary duty, breach of contract, and breach of the warranty of merchantability.  As discussed above, the Court rejects as legally frivolous plaintiff's theory that defendants could be held liable for his criminal conduct leading to his arrest, conviction, imprisonment, and any related hardship he suffered from having been incarcerated.  Nor has plaintiff provided a plausible or non-delusional factual basis for his claims that the defendants discriminated against him or retaliated against him in breach of any contractual provisions or warranties, or sold him goods that were defective, because of his wife's race or his litigation history.  In any event, plaintiff's tort claims are barred by Pennsylvania's two year statute of

limitations, as discussed above.  *See* 42 Pa. Cons. Stat. § 5524; *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 1012 n.91 (Pa. Super. Ct. 2013).

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's complaint.  Having reviewed the complaint as a whole, and considering the frivolous nature of plaintiff's allegations, the Court concludes that amendment would be futile.  An appropriate order follows, which shall be docketed separately.